UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**JOSEPH BOZICEVICH,**

    **Petitioner,**

**v.**                                                          **Case No. 5:21-cv-99-WFJ-PRL**

**WARDEN, FCC COLEMAN – USP I,**

    **Respondent.**
_____

## ORDER

Before the Court is Petitioner Joseph Bozicevich's *pro se* Second Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, (Doc. 5), and Respondent's Opposition to Petition for Habeas Corpus and Motion to Dismiss, (Doc. 11). Upon careful consideration, the Court denies the Second Amended Petition.

## BACKGROUND

Petitioner is a former active-duty member of the United States Army. On September 14, 2008, at Patrol Base Jurf at Sahkr, Iraq, Petitioner shot and killed Staff Sergeant ("SSG") DD and Sergeant ("SGT") WD when they attempted to administer a counseling statement to him. (Doc. 12-2 at 102). Petitioner was heard shouting, "I'm going to kill you" before firing his rifle at SSG DD. *Id*. Eyewitnesses saw Petitioner continue to shoot his rifle while SSG DD was running away from Petitioner and after SSG DD collapsed and pleaded for Petitioner to stop. *Id*. SGT WD was found fatally

shot, lying in the Joint Security Station where the attempted counseling took place. *Id*. Petitioner was immediately apprehended after shooting his victims and was heard stating, "I did it so what." *Id*. At trial, Petitioner testified he acted in self-defense after SSG DD and SGT WD drew their weapons and threatened to shoot him if he did not sign the counseling statement. *Id*.

On October 2, 2008, charges were preferred against Petitioner for premeditated murder. *Id*. On July 7, 2009, the convening authority referred the charges as a capital case to a general court-martial. *Id*. A panel with enlisted representation, sitting as a general court-martial, convicted Petitioner, contrary to his pleas, of two specifications of premeditated murder, in violation of Article 118, Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 918 (2006 & Supp. I 2008). *Id*. at 101. The panel sentenced Petitioner to a dishonorable discharge, confinement for life without eligibility for parole, forfeiture of all pay and allowances, and reduction to the grade of E-1. *Id*. at 101–02. The convening authority approved the adjudged findings and sentence. *Id*. at 102.

Petitioner took an appeal to the Army Court of Criminal Appeals ("ACCA") pursuant to Article 66, UCMJ (10 U.S.C. § 866). At the ACCA, the Petitioner "raised nine assignments of error, four of which warranted discussion but no relief." *Id*. at 102. The ACCA reviewed the trial remedies for disclosure violations, reviewed the judicial remedies for those violations, the military judge's decision to exclude a portion of defense counsel's cross examination as hearsay, and finally, ineffective assistance of counsel. *Id*. at 101–17. After "consideration of the entire record" the ACCA affirmed

the findings of guilt and the sentence. *Id*. At 117. Petitioner's motion for reconsideration was denied on July 18, 2017. (Doc. 12-2 at 93). On January 2, 2018, the United States Court of Appeals for the Armed Forces denied the Petitioner's request for review. *Id*. at 1.

In his Second Amended Petition, Petitioner alleges eight grounds for relief: (1) whether the two charges for Article 118 are legally and factually sufficient to withstand his conviction because the prosecution failed to prove that the killing was unlawful and that he had a premeditated intent to kill; (2) whether certain government witnesses should have been impeached for perjury; (3) whether he was subjected to cruel and unusual punishment in violation of Articles 13 and 55, UCMJ; (4) whether alleged mishandling of evidence, contamination of the crime scene, and the inappropriate collection of evidence was prejudicial; (5) whether the chain of custody was broken; (6) whether the judge abused her discretion by not granting a mistrial due to a *Brady* violation; (7) whether he received a fair trial due to the trial judge failing to grant a mistrial because of "obvious and very prejudicial statements, error, and evidence not entered on the record"; and (8) whether he received effective assistance of counsel. *See* Doc. 5-1 at 18.

## DISCUSSION

The military criminal justice system is governed by the UCMJ, 10 U.S.C. §§ 801-946a, which provides for courts-martial, *id*. §§ 816-829; appellate review by both a branch-specific Court of Criminal Appeals and the Court of Appeals for the Armed Forces (CAAF), *id*. §§ 866-67; and limited *certiorari* review by the Supreme Court, *id*.

§ 867a. A general court-martial consists of a presiding military judge and eight members, who vote on the factual findings. 10 U.S.C. §§ 816(b)(1), 851.

The UCMJ and the military justice system generally do not provide for collateral review of convictions. *United States v. Murphy*, 50 M.J. 4, 5-6 (C.A.A.F. 1998). Accordingly, servicemembers who raise ineffective-assistance claims typically do so on direct appeal as *Grostefon*[1] issues, including claims based on appellate counsel. *Id.* at 8; *United States v. Shadricks*, 78 M.J. 720, 722 & n.1 (A.F. Ct. Crim. App. 2019); *see also United States v. Adams*, 59 M.J. 367, 368 (C.A.A.F. 2004) (addressing a claim based on ineffective assistance of appellate counsel that was raised in a petition to the CAAF). When a defendant raises an ineffective-assistance claim on direct appeal, a military appeals court may order that an evidentiary hearing be held to develop the factual record. *United States v. Wean*, 37 M.J. 286, 287-88 (C.M.A. 1993).

Military courts have limited ability under the All Writs Act, 28 U.S.C. § 1651, to issue writs of habeas corpus, as their jurisdiction to do so ends once direct review has been completed and the court-martial is final. *See Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (concluding there was no jurisdiction over a habeas petition once a conviction was final); *see also Sutton v. United States*, 78 M.J. 537, 541 (A.F. Ct. Crim. App. 2018) (same, but in the context of writs of mandamus and prohibition); *cf. Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005) (concluding there was jurisdiction over a habeas petition where the conviction was not final).

---

[1] *United States v. Grostefon*, 12 M.J. 431, 435-37 (C.M.A. 1982) (explaining a defendant can personally raise issues on appeal that his counsel believes are frivolous).

However, military courts do have jurisdiction to issue the writ of error *coram nobis* after a conviction is final because *coram nobis* is an extension of the original proceeding. *United States v. Denedo*, 556 U.S. 904, 912-13, 917 (2009).

Civilian courts have jurisdiction under § 2241 over habeas petitions that challenge military convictions, but review in this context is narrower than in other contexts. *Burns v. Wilson*, 346 U.S. 137, 139 & n.1 (1953) (plurality opinion); *see also Calley v. Callaway*, 519 F.2d 184, 194-98 (5th Cir. 1975) (*en banc*) (providing an historical overview of federal habeas review of military convictions).[2] When a military decision has dealt fully and fairly with an allegation raised in a habeas corpus petition, a district court is without authority to grant the writ simply to re-evaluate the evidence. *Burns*, 346 U.S. at 142. Rather, it is the limited function of the district court to determine whether the military court has given fair consideration to the petitioner's claims. *Id*. at 144. In *Calley*, the former Fifth Circuit applied *Burns* and held that review of a military conviction is appropriate only if four conditions are met: (1) the claim is of "substantial constitutional dimension;" (2) the issue is one of law, rather than one of disputed fact determined by a military tribunal; (3) there are no military considerations that warrant different treatment of constitutional claims; and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards. 519 F.2d at 199-203. A petitioner has the burden of

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

showing that the military courts were "legally inadequate" to resolve his claims. *Burns*, 346 U.S. at 146.

### A. Ground One

Petitioner alleges his charges under Article 118(a) are legally and factually insufficient to withstand his conviction because the prosecution failed to prove that the killing was unlawful and that he had a premeditated intent to kill. (Doc. 5-1 at 3–4; 19–22). Petitioner presented this argument in his initial appeal in the United States Army Court of Criminal Appeals. (Doc. 12-4 at 46–52; Doc. 12-2 at 148–49). Petitioner did not present this claim in his Petition for Grant of Review in the United States Court of Appeal for the Armed Forces. *See* Doc. 12-2 at 3–85.

Federal courts "will not review petitioners' claims on the merits if they were not raised at all in the military courts." *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir.), *cert. denied*, 476 U.S. 1184 (1986); *see also Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003) ("[I]f a ground for relief was not raised in the military courts, then the district court must deem that ground waived."), *cert. denied*, 540 U.S. 973 (2003). Because this claim was not exhausted in the military courts, Petitioner cannot raise it here. *See Schlesinger v. Councilman*, 420 U.S. 738, 758 (1975) (explaining a federal court will not normally entertain a habeas petition by a military prisoner unless all available military remedies have been exhausted); *Smith v. Jones*, 256 F.3d 1135, 1138-39 (11th Cir. 2001) (stating a failure to exhaust a claim matures into a procedural default as soon as the once available remedy is closed); *see also Lips v. Commandant, U.S. Disciplinary Barracks*,

6

997 F.2d 808, 812 (10th Cir. 1993)³ (analogizing procedural default in the § 2254 context and the military context). Petitioner did not raise this claim at the final level of appeal, even though he had the opportunity to do so. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating a prisoner "must give the ... courts one full opportunity to resolve any constitutional issues by invoking one complete round of the ... established appellate review process" and holding a petitioner's failure to timely present three of his federal habeas claims to the state supreme court, where review was no longer available, resulted in the claims being procedurally defaulted). Thus, this claim is procedurally barred.⁴

## B. Ground Two

Petitioner claims that because multiple witnesses' testimony was either false or impeached, his charges should be dismissed. (Doc. 5-1 at 22–27). Petitioner appears to be challenging the admission of these witnesses' testimony.⁵ Military Rule of Evidence 611 governs the mode and order of examining witnesses and presenting evidence. MRE 611(a)-(c). The rule provides for the scope of cross examination and limits it to "the subject matter of the direct examination and matter affecting the

---

³ As the Fifth Circuit has noted, most of the caselaw concerning habeas review of military convictions is from the Tenth Circuit because the United States Disciplinary Barracks is located at Fort Leavenworth, Kansas. *Fletcher v. Outlaw*, 578 F.3d 274, 277 n.2 (5th Cir. 2009).

⁴ To the extent a claim of ineffective assistance of counsel is raised in this claim, it will be addressed in Ground Eight, below.

⁵ To the extent Petitioner claims his counsel was ineffective for failing to either expand upon or challenge these witnesses' testimony at trial it will be addressed in Ground Eight, below.

7

witness's credibility." MRE 611(b). It is not clear whether Petitioner raised this claim in the military courts, and therefore it is not properly before this Court. *See Watson*, 782 F.2d at 145 (federal courts "will not review petitioners' claims on the merits if they were not raised at all in the military courts."). In the event it was properly argued and exhausted, the ACCA found that none of Petitioner's assignments of error warranted relief and affirmed the convictions "[o]n consideration of the entire record…" (Doc. 12-2 at 102, 117). This ground is denied.

### C. Ground Three

Petitioner seeks a reduction in his sentence due to being subjected to cruel and unusual punishment in violation of Articles 13 and 55 of the UCMJ. (Doc. 5-1 at 27–30). Article 13 is a provision unique to the military justice system. 47 U.S.C. § 813. This provision provides that no person shall be subject to punishment or penalty prior to trial more rigorous than required to ensure his presence. 47 U.S.C. § 813. This claim presents no "substantial constitutional dimension" for the court to review, *see Dodson v. Zelez*, 917 F.2d 1250 (10th Cir. 1990), and furthermore Petitioner identifies no mechanism for the court to reduce his sentence based on any alleged violation. Additionally, Petitioner did not raise on appeal any issues related to the process of granting confinement credit or illegal pretrial punishment. Thus, this claim is procedurally barred.

### D. Ground Four

Petitioner claims the "entire criminal investigation" was tainted by incompetent investigators. (Doc. 5-1 at 30–31). He claims the Special Agents investigating the crime

8

scene mishandled evidence, contaminated the crime scene, and used inappropriate techniques for collecting evidence. *Id*. Petitioner did not present this claim in either of his appellate filings. Because this claim was not raised in the appellate military courts, it is deemed waived. *See Watson*, 782 F.2d at 145. Thus, this claim is procedurally barred.

### E.  Ground Five

Petitioner claims the chain of custody for items collected on Patrol Base Jurf was broken. (Doc. 5-1 at 31–32). Petitioner alleges the crime scene was never preserved, was contaminated by platoon members, and weapons were removed from the crime scene prior to being photographed. *Id*. at 31. Some of this evidence was presented by the prosecution. *Id*. Petitioner did not challenge the chain of custody in either of his appellate filings. Thus, this issue is deemed waived and is procedurally barred.

Petitioner complains that the "prosecution used some of these items to inflame the passions of panel members when he waived [sic] bloody clothes in the faces of the panel members during the closing arguments." *Id*. The admissibility of this evidence was addressed during the trial and was raised and considered as part of his *Grostefon* matters presented to the CAAF. Petitioner claimed the "military judge erred in admitting evidence of SSG DD's bloody ACUs because they were not legally relevant, being cumulative, and the probative value was substantially outweighed by the danger of unfair prejudice." (Doc. 12-2 at 67). By denying the petition for grant of review, the CAAF found the claim without merit. (*Id*. at 1). Accordingly, it is a generally accepted

9

principle of law that habeas petitions alleging errors by military courts must be denied, where those alleged errors were given "full and fair consideration" by the military tribunal. *See Lips*, 997 F. 2d at 811. A district court may not review challenges to military courts-martial unless the military courts have "manifestly refused to consider those claims." *Burns*, 346 U.S. at 142. Petitioner has failed to show that the military courts did not consider this claim. This ground is denied.

### F. Ground Six

Petitioner claims the trial judge abused her discretion by denying a mistrial due to a *Brady* violation related to Appellate Exhibit 318, the notes of Captain Presson. (Doc. 5-1 at 32). Petitioner claims the notes would show SSG Dawson's propensity for violence based on incidents between SSG Dawson and Dawson's wife. *Id*. Captain Presson's notes described two incidents and the corresponding police reports. The first incident involved SSG Dawson "sneaking into his wife's home while she slept and began to choke her unconscious until a friend of Mrs. Dawson's yelled at him to stop." *Id*. The second incident occurred at a public gas station where SSG Dawson "plac[ed] a loaded hand gun to [Mrs. Dawson's] head." *Id*. At trial, Mrs. Dawson "could not remember things." *Id*. Petitioner claims that this information would have supported his claim of self-defense. *Id.*

Petitioner raised this claim in trial and on appeal. The ACCA summarized the proceedings and denied the claim:

… Second, the defense claimed the government failed to disclose information from Ms. LD that SSG DD threatened her with a gun during an unrelated argument [hereinafter "LD statement"].

. . .

Regarding the LD statement, the military judge found trial counsel's late disclosure of the potential impeachment evidence "was grossly negligent" and a *Brady* violation. Although she concluded the alleged specific instance of misconduct in the LD statement was inadmissible under Military Rule of Evidence [hereinafter Mil. R. Evid.] 403 and Mil R. Evid. 404(b), the military judge stated it was potential support for "opinion [or] reputation testimony of the victim's character trait for violence . . . ." Defense counsel again moved the military judge to declare a mistrial, but the military judge denied the request. As a lesser remedy for the untimely disclosure, the military judge offered to strike Dr. Geiger's testimony about appellant's delusion disorder, which would allow the defense to pursue a self-defense strategy without reference to appellant's mental health. After weighing the strategic implications of the lesser remedy, defense counsel declined.

*2. Appellate Review of Judicial Remedies*

On appeal, this court reviews questions regarding discovery requirements de novo. However, we review the sufficiency of judicial remedies crafted to cure discovery violations for an abuse of discretion. [*United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015)]. Neither the government nor appellant challenges the military judge's findings regarding the asserted discovery violations. Instead, the parties disagree about the sufficiency of the military judge's remedies. After a careful review of the record, we find the military judge did not abuse her discretion in crafting remedies for the disclosure violations.

As an initial matter, we note the high standard before declaring a mistrial: "when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings." R.C.M. 915(a). Because a mistrial is such an "unusual and disfavored" remedy, it "should be applied only as a last resort to protect the guarantee for a fair trial." *United States v. McFadden*, 74 M.J. 87, 89 (C.A.A.F. 2015) (internal quotation and citation omitted). *See* R.C.M. 915(a) discussion ("The power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons."). Thus, when a military judge determines the extreme remedy of mistrial is unwarranted, appellate courts will not reverse this decision absent "findings of fact [that] are clearly erroneous, . . . an erroneous view of the law, or the military judge's decision . . . is outside the range of choices

11

reasonably arising from the applicable facts and the law." *Stellato*, 74 M.J. at 480 (internal quotation marks and citation omitted).

. . . In addition, appellant's speculation that he would have pursued a different trial strategy had the LD statement been timely disclosed similarly fails to meet th[e high standard for discounting the military judge's findings.] *See* [*United States v. Trigueros*, 69 M.J. 604, 610 (Army Ct. Crim. App. 2010)] (finding the government's nondisclosure harmless beyond a reasonable doubt after rejecting appellant's speculative claim that absent the nondisclosure he "would have altered his pretrial strategy"). As is the case here, when a military judge "is satisfied that the Government has not engaged in intentional misconduct . . . and concludes that an instruction will cure the potential error, such a procedure is 'preferred.'" *United States v. Garces*, 32 M.J. 345, 349 (C.M.A. 1991) (citations omitted). Accordingly, we find no abuse of discretion when the military judge determined the circumstances in this case failed to justify such an extreme remedy.

Looking next to the remedies proposed and implemented, we find they sufficiently cured any potential prejudice from the untimely disclosures. "As a general matter, when an appellant has demonstrated error with respect to a *Brady* nondisclosure, the appellant is entitled to relief only if there is a reasonable probability that there would have been a different result at trial had the evidence been disclosed." *Trigueros*, 69 M.J. At 609 (citing *United States v. Santos*, 59 M.J. 317, 321 (C.A.A.F. 2004)). . . . The military judge also offered the defense an opportunity to strike Dr. Geiger's testimony and essentially present a classic self-defense argument to the panel without reliance on a mental health diagnosis. This multifaceted remedy along with the late but prefindings disclosure of the Slate notes and LD statement sufficiently cured any potential prejudice from the untimeliness of the government's disclosure.

Even assuming the military judge abused her discretion in crafting lesser remedies by refusing to strike Ms. Rasmussen's testimony or admit the LD statement, we find no prejudice because of the overwhelming evidence of appellant's guilt in this case. Appellant's murders of SSG DD and SGT WD were immediately detected. Appellant's murder of SSG DD was preceded and followed by incriminating statements. Appellant screamed, "I'm going to kill you" before firing his rifle, and admitted "I did it so what" immediately afterwards. Eye witnesses saw appellant continue his attack on SSG DD under circumstances precluding any colorable claim of self-defense, which included shooting SSG DD while he was running away from appellant. The physical evidence also corroborated appellant's admissions and eyewitness testimony. Accordingly, even if we assume the military judge erred in crafting a sufficient remedy for constitutional discovery violations, the

circumstances did not warrant a mistrial and the refusal to strike Ms. Rasmussen's testimony or admit the LD statement was harmless beyond a reasonable doubt.

(Doc. 12-2 at 103–07). Petitioner raised this claim in his Supplement to Petition for Grant of Review. *See id*. at 19–31. The CAAF denied the petition. (*Id*. at 1). Accordingly, because this claim was given "full and fair consideration" by the military tribunal, this claim is denied. *See Lips*, 997 F.2d at 811.

### G. Ground Seven

Petitioner claims he did not receive a fair trial due to the trial judge's denials of his numerous requests for mistrial. (Doc. 5-1 at 32–34). He further alleges that the prosecution's actions should have resulted in a mistrial. He claims, *inter alia*, the prosecution disregarded the instruction of the military judge and the military judge allowed hearsay evidence to be admitted. Petitioner presented the claim of prosecutorial misconduct in his appellate brief to the ACCA, s*ee* Doc. 12-3 at 224–28; Doc. 12-4 at 1–17, and his reply brief, *see* Doc. 12-2 at 132–38. He also presented the admission of hearsay evidence in his appellate brief, *see* Doc. 12-4 at 18–27, and his reply brief, *see* Doc. 12-2 at 138–42. The ACCA rejected Petitioner's claims. *See* Doc. 12-2 at 107–12. Petitioner then raised these claims in his supplement to petition for grant of review filed in the CAAF. (*Id*. at 19–43). The CAAF denied the petition. (*Id*. at 1).

Accordingly, to the extent Petitioner raised these claims on appeal, they were given "full and fair consideration" by the military tribunal, and this claim is denied.

13

*See Lips*, 997 F.2d at 811. To the extent these claims were not raised in the appellate military courts, they are deemed waived.

### H.  Ground Eight

Petitioner claims his counsel rendered ineffective assistance by failing to properly investigate and present his claim of self-defense due to multiple alleged failures. (Doc. 5-1 at 34–37). Petitioner's claims appear to allege that there was a plot by his platoon's chain of command to replace him, either through demotion or death, with another soldier they wanted in the team leader position. In his brief before the ACCA, Petitioner stated the following regarding his acting in self-defense:

> According to Appellant, he was in the JSS with Mr. Faisal, and SSG DD and SGT WD entered. SSG DD motioned for Mr. Faisal to leave, and handed Appellant a stack of counseling papers. R. at 5773. Appellant told SSG DD and SGT WD that he was not going to sign the counseling papers because in his view they were unlawful. *Id*. At this point SSG DD said, "If you don't sign it, you're a private. If you do sign it, you're a specialist." R. at 5774-75.
> Appellant testified that he asked SSG DD, "Who has my [High Explosive] round? I know you know who has it," to which SSG DD responded, "Who cares if I know? I got you. Your career is done. We got you." R. at 5775. Appellant asked SSG DD, "We, as in the black masons?" SSG DD looked to his left and said, "[SGT WD]," who chambered his weapon and stuck it six inches from Appellant's head. *Id*. Appellant responded by saying, "get that thing out of my face." *Id*. Appellant testified that SSG DD "locked and loaded. He stuck it to my head and said, 'Sign these fucking counselings' – or 'Sign these fucking forms or I'll shoot you." Appellant responded, "You're not going to shoot me," and SSG DD responded, "The fuck I will." *Id*. SSG DD, "I have Sergeant Major and Sergeant Purdue to back me up. We masons do what we want to do." *Id*.
> Sergeant WD then told Appellant, "By the time I count to five, if you don't sign those damn things, I'm going to blow your damn head off." *Id*. Appellant said he heard "One, Two, click," and heard three. *Id*.
> . . .

14

> Appellant testified that he shot SSG DD and SGT WD because "their weapons were chambered, locked and loaded, pointed at me at least twice from each person, -- or once from [SSG DD] and once from [SGT WD] and they said they were going to kill me." R. at 5778. Appellant said he believed he was about to be killed. *Id*.

(Doc. 12-5 at 97–100) (Footnote omitted).

Petitioner alleged his counsel was ineffective throughout his brief before the ACCA. (Doc. 12-3 at 144–228, Doc. 12-4 at 1–61). Petitioner also specifically alleged he was denied the effective assistance of counsel when his attorneys failed to properly investigate his claim of self-defense. (Doc. 12-4 at 52–61). Petitioner's reply brief further supported his argument. *See* Doc. 12-2 at 149–53. The ACCA, after thorough analysis, rejected this claim. (*Id*. at 113–17). It specifically concluded Petitioner "failed to meet his burden to show deficient performance or preparation by his trial defense team", *id.* at 116, and could not establish prejudice due to "the overwhelming evidence of [Petitioner's] guilt in this case." *Id*. Petitioner then presented this claim to the Court of Appeals for the Armed Forces as a *Grostefon* issue. (*Id*. at 76–79). The CAAF denied the petition. (*Id*. at 1).

This claim was fully and fairly considered by the Army Court of Criminal Appeals and review was denied by the Court of Appeals of the Armed Forces. This claim is denied.

## CONCLUSION

Based on the foregoing, Petitioner's Second Amended § 2241 Petition (Doc. 5) is **DENIED**. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close this case.

**DONE AND ORDERED** at Tampa, Florida, on July 19, 2023.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Petitioner, *pro se*
Counsel of Record